**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 13 CR 312 |
| v. | ) | |
| | ) | Honorable Amy J. St. Eve, |
| EDWARD J. NOVAK, | ) | Acting Chief Judge |
| ROY M. PAYAWAL, | ) | |
| VENKATESWARA R. KUCHIPUDI, | ) | |
| PERCY CONRAD MAY, JR., | ) | |
| SUBIR MAITRA, and | ) | |
| SHANIN MOSHIRI | ) | |

**DEFENDANT VENKATESWARA R. KUCHIPUDI'S OBJECTION TO**
**GOVERNMENT'S MOTION FOR A FORTY-FIVE DAY**
**EXTENSION OF TIME IN WHICH TO RETURN INDICTMENT**

Defendant Venkateswara R. Kuchipudi ("Dr. Kuchipudi"), by and through his undersigned counsel, respectfully submits his objection to the Government's Motion for a Forty-Five Day Extension of Time in Which to Return an Indictment, filed on August 7, 2013. In support of his objection, Dr. Kuchipudi states as follows.

**I.      Background**

After coming to this country as a young man in the 1970's, Dr. Kuchipudi had attained the American Dream. For over 35 years, all who knew Dr. Kuchipudi regarded him as an upstanding member of his community. He had built a respected practice as a doctor who cared primarily for the elderly and for those who were too poor to afford medical care. He had raised two sons who had become doctors themselves, and also a daughter who had chosen the legal profession. Over the more than three decades that he has lived in this country, Dr. Kuchipudi has received numerous awards and commendations for his work, including having been named one of "America's Top Physicians" and professionally recognized by President Bush. Not once

during his 35-year decorated career as a caregiver was he ever accused of an impropriety with respect to his medical practice, his billing, or for that matter – anything.

On April 16, 2013, Dr. Kuchipudi's life forever changed. That morning, the 66 year-old doctor awoke to armed agents. Those agents – apparently believing such showing of force necessary for an elderly man with no criminal history – restrained Dr. Kuchipudi and forcibly placed him under arrest.

That same day, the Government made public allegations, contained in a criminal complaint and publicized in a United States Attorney's Office press release, that Dr. Kuchipudi had: (1) engaged in a health care kick-back scheme; (2) engaged in health care fraud by sending his patients to receive "unnecessary" medical treatment; and (3) engaged in fraud by billing for work that he did not perform. *See* Compl. ¶¶ 77-120; 151-53; Ex. A, April 16, 2013 DOJ Press Release. Moreover, the Government's allegations strongly suggested that Dr. Kuchipudi had allowed his patients to receive unnecessary tracheotomy procedures, some of which resulted in the patients' death. *See e.g.*, Compl. at ¶¶ 125; 130-142.[1]

The Government then requested that Dr. Kuchipudi be detained in federal prison for three days as prosecutors took time to gather arguments for bond restrictions. The Government also sought, and ultimately obtained, restrictive bond conditions for Dr. Kuchipudi. The conditions included the posting of approximately $3.5 million in liquid assets and, importantly, restrictions on Dr. Kuchipudi's medical practice that effectively ended his ability to practice medicine. Ex. B, April 30, 2013 Hearing Tr. at 14:24-15:6; 21:25-23:22. In arguing for these bond

---

[1] Immediately following Dr. Kuchipudi's arrest, various news organizations and outlets began reporting, based on the criminal complaint, what was described as "ghoulish" crimes having been committed. *See, e.g*., http://www.suntimes.com/news/crime/19520440-418/feds-raid-sacred-heart-hospital-arrest-owner-and-doctors.html (last accessed Aug. 8, 2013); http://wftc.membercenter.worldnow.com/story/22031870/owner-of-raided-chicago-sacred-heart-hospital-free-on-bond (last accessed Aug. 8, 2013).

conditions, the prosecutor stated that Dr. Kuchipudi was "a danger to his own patients in that he was sending patients to a hospital for medically unnecessary treatment." *Id.* at 18:11-14.

Based on these allegations, the state Medicaid and federal Medicare programs separately suspended Dr. Kuchipudi's Medicare/Medicaid privileges, effectively shutting the doors on a medical practice that had operated complaint-free for 35 years. *See* Ex. C, D.

### A. Speedy Trial Clock

Dr. Kuchipudi and his co-defendants each appeared before the Magistrate Judge on April 16, 2013, setting in motion the 30-day Speedy Trial clock. On May 9, 2013, the Government requested an additional ninety days to indict the defendants.[2] (R. 70-1, at pp. 3, 4.) In support of this extension, the Government cited its need to "investigate further the criminal conduct alleged in the criminal complaint," including an alleged kickback conspiracy and "two additional related criminal schemes related to unnecessary medical procedures, including tracheotomies." (*Id.*) The Government supported its request for a ninety-day extension with its need to:

1. Pursue investigative interviews that were unavailable while the investigation was covert;

2. Review materials recovered in the search warrants that were executed on April 16, 2013;

3. Review materials obtained from numerous subpoenas, which the agents were "in the process of reviewing" on May 9, 2013; and

4. Allow experts to review medical records.

As legal support for the extension, the Government argued that it was "unreasonable to expect" an indictment within 30 days because "the facts upon which the grand jury must base its determination are "unusual or complex." Alternatively, the Government argued that – even if the

---

[2] Each of the defendants agreed to this extension, but Dr. Kuchipudi expressly noted that he would not agree to an additional extension.

case was not unusual or complex – failure to grant an extension would deny the Government attorney "reasonable time necessary for effective preparation." (*Id.* at 8.) Importantly, the Government concluded by noting that "the proposed extension (90 days) would provide the Government the time necessary to review and analyze a significant volume of recently obtained information" and would "provide ***the necessary time*** to review these materials and interview the large number of [witnesses] ***necessary to seek an indictment that addresses the scope of the criminal activity under investigation.***" (*Id.* at 9) (emphasis added). Given these representations, Chief Judge Holderman permitted the Government until August 13, 2013 to indict the defendants. (R. 73-1.)

On the evening of August 7, 2013, the Government filed a motion seeking an additional 45 days to "investigate further the criminal conduct alleged in the criminal complaint."[3] (R. 102 at 4.) Just as it did three months earlier, the Government cited the following reasons for additional time:

1. Its need to continue to interview witnesses.

2. Its need to review the search warrant materials, which it is "in the process of doing."

3. Its need to review voluminous records and pursue investigative leads.

Citing the identical, pro-forma, legal arguments that it argued in its prior motion, the Government summarily concluded that the ends of justice served by an extension outweigh those served by a speedy trial.

## II.    Analysis

Both the Sixth Amendment and the Speedy Trial Act require that a defendant be given a speedy trial. The Speedy Trial Act, in particular, requires that the Government bring an

---

[3] The Government contacted undersigned counsel at 5:00 p.m. on August 7, 2013 to inform them of the impending request.

indictment within thirty days from the date on which such a defendant was arrested. 18 U.S.C. § 3161(b). While there are circumstances under which the Government can extend that thirty day period, those circumstances are limited to those enumerated in the Act. *See* 18 U.S.C. § 3161(h); *see also U.S. v. Marin*, 7 F.3d 679, 682 (7th Cir. 1993) ("The statute also specifically provides for the exclusion of certain periods of delay in the computation of the timeframe within which an indictment must be filed."). As the Supreme Court has recognized, the Speedy Trial Act "serves not only to protect defendants, but also to vindicate the public interest in the swift administration of justice." *Bloate v. United States*, 559 U.S. 196, 211 (2010).

### A. The Government Has Failed to Establish A Legitimate Need for An Extension

Dr. Kuchipudi disagrees with the Government's argument that the ends of justice require yet another extension of the period in which to indict. As outlined below, Dr. Kuchipudi has suffered and continues to suffer immense prejudice as a result of unchallenged accusations that have – for all intents and purposes – ended his life as he knew it. Moreover, the Government has failed to explain why it needs an additional 45 days (on top of the 120 days it has already had) to investigate this case. This omission is especially puzzling given its representation in its first request for an extension that 120 days would be sufficient. In its August 7 motion, the Government did not identify or explain any issues or problems it has run into over the course of the last 90 days that would warrant its investigative interests trumping the rights guaranteed to Dr. Kuchipudi. The Government also did not explain why the ends of justice favor allowing it to continue to investigate crimes that it publically alleged – four months ago – without giving Dr. Kuchipudi the opportunity to defend himself. Further, the Government did not explain why this case is so unusual or so complex to justify <u>165</u> days between the time of arrest and indictment. Certainly, the Government believed it had enough information to charge Dr. Kuchipudi with a

5

crime almost four months ago, on April 16, 2013, when it forcibly arrested him at gunpoint. Once it made that decision, the Speedy Trial Act requires that, absent exclusions, the Government be ready to bring the case *to trial* in 100 days. Yet, the Government offers no explanation of why this particular case is so complex that it will take the Government 165 days just *to bring an indictment.*

The Government has full control over its investigations and when it chooses to indict. For that reason, it should be required to time its investigations and indictments correctly, rather than causing defendants to languish perpetually in the looming fear of an eventual prosecution due to its own poor planning. The Government is certainly capable of charging health care fraud/kick back patients via indictment, without using a criminal complaint. *See, e.g.*, *United States v. Encinares*, 12 CR 491 (N.D. Ill.) (nine-defendant health care fraud case charged via indictment). And although it is understandable that the Government acted with urgency based on the belief that lives might have been at stake, the Government has many avenues – including knock and talks, search warrants, and administrative interventions, to name a few – available to intercede in what it believes to be high risk situations. Sometimes hard choices have to be made. If bringing a criminal complaint results in the compromise of a larger or more important investigation, then the Government has the option to not bring the case in the first instance. But once it brings a case, any delays must be justified under the Speedy Trial Act. *Compare United States v. Jorn*, 400 U.S. 470, 486 (1971) (plurality opinion) ("The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee.").

Given the record before the Court, Dr. Kuchipudi respectfully submits that the Government has fallen far short of a showing that an extension is warranted.

### B. Dr. Kuchipudi Is Severely Prejudiced

While the Government has not shown a legitimate need for an extension, the harm that Dr. Kuchipudi has suffered as a result of delays in this case is palpable. As a result of an unchallenged accusation, Dr. Kuchipudi has lost his profession, his income, his friends, his support, and a reputation that he worked for 35 years to build. *See United States v. Annerino*, 495 F.2d 1159, 1163-64 (7th Cir. 1974) (noting that anxiety, travel restrictions, and an inability to secure employment weighs against the government in Speedy Trial context); *see also United v. Taylor*, 487 U.S. 326, 340-341 (1988) (noting that "delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."). Moreover, based solely on an unchallenged criminal complaint, Dr. Kuchipudi has had to post $3.5 million in liquid assets as part of his bond conditions.

As detailed in the opening paragraph of this brief, prior to April 16, 2013, Dr. Kuchipudi had an unblemished background as an award-winning and nationally-recognized physician. Counsel highlighted these facts not in an attempt to invoke sympathy for him, but rather because understanding his background is important to comprehend just how radically Dr. Kuchipudi's life changed as the result of the complaint filed in this case. Without the benefit of cross-examination, without the benefit of a full representation – let alone hearing – of the facts, and without the chance to defend himself, Dr. Kuchipudi's life as he knew it effectively came to an end with the filing of the criminal complaint on April 16, 2013. Although the Government is certainly permitted to charge a defendant by criminal complaint, the Constitution and the laws of

this country specifically delineate protections for the accused. Because this nation is founded on the principle that defendants are innocent until proven guilty, the law mandates that those who have been alleged, by criminal complaint, to have committed a crime must be indicted by a grand jury within 30 days. The logic underpinning the statute is clear – defendants have a right to expeditiously defend themselves.

All that Dr. Kuchipudi asks for is a forum in which to start the process of defending himself. He seeks to have a full airing of the facts of this case as soon as the law allows, both because that is his right, and more importantly because even a preliminary review of the allegations in this case reveals demonstrable problems with the Government's proposed case.

Specifically, a review of the allegations contained in the complaint suggests that the Government has overreached in its interpretations of the recordings involving Dr. Kuchipudi, and has also failed to give proper consideration to several exculpatory conversations in those recordings.[4] For example, an underlying tenant of the allegations is that Dr. Kuchipudi ordered unnecessary medical services for his patients at Sacred Heart. *See, e.g.*, Compl. ¶¶ 104-20. Yet, the Government failed to inform the Magistrate Judge of the evidence -- contained in the same conversations from which it cherry-picks Dr. Kuchipudi's words -- that Dr. Kuchipudi was upset, and in fact lodged a complaint, because he noticed that emergency room doctors at Sacred Heart often ordered unnecessary consultations for his patients.[5] *See* February 28, 2012 Recording,

---

[4] The Government provided Dr. Kuchipudi with recordings on which his voice was heard. Counsel for Dr. Kuchipudi asked the Government, on several occasions, for additional discovery materials that would help Dr. Kuchipudi to evaluate and consider the accusations that the Government had made. While the Government was certainly not obligated, at the time, to produce the requested materials, Dr. Kuchipudi had hoped that given the nearly four months that the Government had to examine the case between arrest and indictment, that the Government would provide some level of additional discovery to Dr. Kuchipudi. The Government, however, has not granted these requests.

[5] This critique puts aside, for the time being, the fact that medical professionals can and often do have differing opinions about what is medically necessary.

Second Session at 9:39:50.[6] This evidence is entirely inconsistent with the Government's theory of the case, yet was left out of the complaint. Similarly, the recordings also show that Dr. Kuchipudi repeatedly complained to Administrator A that Sacred Heart employees inaccurately calculated patient census reports, which it appears Dr. Kuchipudi believed meant that Sacred Heart would then inadvertently bill for patients who were not actually in the hospital. *See, e.g.*, March 12, 2013 Recording, *passim*. Again, Dr. Kuchipudi's own words – on the tapes in which the Government relies for their allegations -- are entirely inconsistent with an intent to commit healthcare fraud.

What is more, while the sensational allegations in the Complaint suggest that Dr. Kuchipudi's patients were subjected to unnecessary tracheotomies, the Government failed to include in the complaint the fact that the very recordings on which it relies in support of its other allegations demonstrate that *Dr. Kuchipudi himself* stopped what he believed to be an unnecessary tracheotomy that another doctor scheduled for one of his patients. *See* March 5, 2013 recording at 6:00 and 10:45.

With respect to their primary allegation, the Government's affidavit states that Dr. Kuchipudi received kickbacks in exchange for patient referrals to Sacred Heart in the form of (1) paying the salaries of Employee A, a physician assistant, and Employee B, a registered nurse, whom the Government claims are "effectively employed by Kuchipudi" and "assigned to work almost exclusively for Kuchipudi"; and (2) payments to a covering physician (Physician B) who treated Dr. Kuchipudi's patients on weekends. *See* Compl. ¶ 80. Although left out of the complaint, on the recordings that purportedly support this allegation, Dr. Kuchipudi, Administrator A, and Defendant Novak acknowledge that Physician B, Employee A, and

---

[6] If the Court would like a copy of these recordings, counsel would be happy to provide them.

Employee B provide services to doctors at Sacred Heart other than Dr. Kuchipudi. *See, e.g.*, February 14, 2013 Recording at 7:00-8:00; March 1, 2013 Recording at 9:20-10:50, and March 15, 2013 Recording at 8:40. In other words, Employee A, Employee B, and Physician B's services were not kickbacks that Dr. Kuchipudi received in exchange for patient referrals. Instead, they were benefits given to all physicians with privileges at Sacred Heart. This evidence, recorded when nobody thought the Government was listening, severely undermines the allegations in the complaint.

The Government's strained interpretations of the evidence are not limited to the complaint. In support of their bond argument that Dr. Kuchipudi was "a danger to his patients," the prosecutor cited a conversation in which Dr. Kuchipudi specifically stated that the patients he was treating were ill. *See* Ex. B at 18. Astonishingly, from Dr. Kuchipudi's statement that his patients were sick, the prosecutor inferred that some of Kuchipudi's patients were not sick and were therefore receiving unnecessary treatment. *Id*. at 19. The prosecutor's perplexing up-means-down interpretation of Dr. Kuchipudi's words during the bond proceedings is also consistent with the strained allegations in the criminal complaint affidavit.

Dr. Kuchipudi brings this evidence to the Court's attention not because he is seeking a determination on the merits. Rather, it is abundantly clear from the limited, and only, evidence the Government has produced (i.e., the recordings in which Dr. Kuchipudi was a participant), and from other evidence that our investigation has uncovered, that there are severe problems with the Government's allegations. Dr. Kuchipudi merely wants an opportunity to defend himself expeditiously.

### III.     Conclusion

It is time to fish or cut bait.  Almost four months ago, the Government publically alleged that Dr. Kuchipudi has committed extremely serious crimes.  By seeking to delay the indictment in this case another forty-five days, to September 27, 2013, and refusing to produce discovery, the Government is leaving Dr. Kuchipudi in perpetual limbo, with every passing day causing him further, irreparable, harm.   The Constitution and the laws of his country require that Dr. Kuchipudi be permitted to defend himself against the accusations of his Government.  On his behalf, counsel respectfully asks this Court to hold the Government to its statutory and Constitutional obligations, and permit Dr. Kuchipudi a forum in which he can respond to the Government's accusations.

Date: August 8, 2013

Respectfully submitted,

Venkateswara R. Kuchipudi

/s/ Daniel D. Rubinstein
Daniel D. Rubinstein
Steven Grimes
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
drubinstein@winston.com
sgrimes@winston.com

## CERTIFICATE OF SERVICE

I, Daniel D. Rubinstein, an attorney, hereby certify that the foregoing Defendant Venkateswara R. Kuchipudi's Objection to the Government's Motion for a Forty-Five Day Extension of Time in Which to Return an Indictment was served on August 8, 2013, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, U.S. District Court for the Northern District of Illinois Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Daniel D. Rubinstein